# STATE OF CONNECTICUT *v.* CATHERINE BALL ET AL.
## (14646)

PETERS, C. J., CALLAHAN, BERDON, NORCOTT and SANTANIELLO, Js.

Argued April 1—decision released July 6, 1993

*Kathleen Eldergill,* with whom, on the brief, was *W. David Zitzkat,* for the appellants (defendants).

*Harry Weller,* assistant state's attorney, with whom, on the brief, were *Jack W. Fischer,* assistant state's attorney, and *Andrew Wittstein,* supervisory assistant state's attorney, for the appellee (state).

PETERS, C. J. This case is a challenge to the constitutionality of the Connecticut Hunter Harassment Act. General Statutes § 53a-183a.[1] In response to charges of having violated § 53a-183a, the defendants, Catherine Ball, Arlene Corey, William Mannetti and Derek Oatis, filed motions to dismiss, alleging that the statute is unconstitutional, both facially and as applied to

---

[1] General Statutes § 53a-183a provides: "OBSTRUCTING OR INTERFERING WITH THE LAWFUL TAKING OF WILDLIFE: CLASS C MISDEMEANOR. (a) No person shall obstruct or interfere with the lawful taking of wildlife by another person at the location where the activity is taking place with intent to prevent such taking.

"(b) A person violates this section when he intentionally or knowingly: (1) Drives or disturbs wildlife for the purpose of disrupting the lawful taking of wildlife where another person is engaged in the process of lawfully taking wildlife; (2) blocks, impedes or otherwise harasses another person who is engaged in the process of lawfully taking wildlife; (3) uses natural or artificial visual, aural, olfactory or physical stimuli to affect wildlife behavior in order to hinder or prevent the lawful taking of wildlife; (4) erects barriers with the intent to deny ingress or egress to areas where the lawful taking of wildlife may occur; (5) interjects himself into the line of fire;

them, under the first and fourteenth amendments to the United States constitution.[2] The trial court denied the motions to dismiss. Reserving their rights to appeal their constitutional contentions, the defendants entered conditional pleas of nolo contendere pursuant to General Statutes § 54-94a and Practice Book § 4003. Each of the defendants was found guilty as charged and fined $100. The defendants thereafter filed a joint appeal from the judgments of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the denial of the motions to dismiss and remand the case to the trial court for a further evidentiary hearing.

At the hearings on the defendants' pleas of nolo contendere, before *Gill, J.,* the state's attorney presented

(6) affects the condition or placement of personal or public property intended for use in the lawful taking of wildlife in order to impair its usefulness or prevent its use; or (7) enters or remains upon private lands without the permission of the owner or his agent, with intent to violate this section.

"(c) For the purposes of this section, 'taking' and 'wildlife' shall be defined as in section 26-1.

"(d) Any person who violates any provision of this section shall be guilty of a class C misdemeanor."

General Statutes § 26-1 provides in relevant part: "DEFINITIONS. Words and terms used in this chapter shall be construed as follows . . .

"(18) 'Taking' means shooting, pursuing, hunting, killing, capturing, trapping, snaring and netting any species of wildlife and attempting to shoot, pursue, hunt, kill, capture, trap, snare, net or catch any species of wildlife or any act of assistance to any other person in taking or attempting to take such wildlife whether or not such act results in the capture of any such wildlife. . . .

"(21) 'Wildlife' means all species of invertebrates, fish, amphibians, reptiles, birds and mammals which are ferae naturae or wild by nature."

[2] Although the defendants' constitutional claims included a reference to the state constitution, defendants' counsel acknowledged in oral argument in this court that the defendants were pursuing only their claims under the federal constitution. The first amendment to the federal constitution provides in relevant part: "Congress shall make no law . . . abridging the freedom of speech . . . ."

the following facts.[3] On October 19, 1991, at 6:25 a.m., Robert Dubois, a bow hunter with a valid state archery license, was standing at the entrance to the Tunxis State Forest Wildlife Management Area in Hartland, waiting to enter the park. The area is state owned property subject to regulation by the department of environmental protection. On the day in question, a person with a valid archery license could legally engage in archery hunting in the state forest after 7 a.m.

The defendants approached Dubois and told him that they were antihunting activists and that they would follow him into the park. A few minutes later, conservation officer McNamara arrived at the scene. Dubois complained to McNamara that the defendants were planning to harass him. McNamara warned the defendants that, if they interfered with Dubois' hunting, they would be subject to arrest. Dubois told the defendants that he planned to hunt deer from an old apple orchard and asked that he be left alone.

At about 7 a.m., Dubois entered the orchard, took a stand under a tree, and notched an arrow into his bow. The defendants formed a semicircle facing Dubois and tried to dissuade him from hunting. Dubois told them that they were interfering with his hunting and asked them to get out of the line of fire. When the defendants did not move, Dubois asked McNamara to come to his assistance. McNamara explained to the defendants that their interference with Dubois' hunting was illegal and asked them to leave. After consulting among themselves, the defendants decided to be arrested rather than to comply with the request to leave the area. McNamara then arrested the defendants.

---

[3] The defendants' attorney, while voicing his general disagreement with the state's version of the facts, conceded, without adducing further particulars, that "there were facts upon which a judge could find a guilty plea if presented." On this record, for the purpose of this appeal, we accept the state's version of what transpired.

In their motions to dismiss in the trial court, the defendants challenged the constitutionality of § 53a-183a both facially and as applied to the facts of this case. The trial court, *Dranginis, J.*, ruled only on their contention that the statute facially violates their rights to free speech.[4] The defendants' subsequent pleas of nolo contendere precluded further pursuit of their alternate claim that the statute had been unconstitutionally applied in the factual circumstances of their cases.

The trial court upheld the constitutionality of § 53a-183a. In two preliminary respects, the court agreed with the defendants. Accepting the argument that a challenge premised on facial unconstitutionality does not require a factual showing, the court granted the defendants' motions in limine to preclude the state from making an evidentiary showing concerning the nature and extent of the state's interest in preventing the harassment of hunters and the circumstances of the defendants' alleged misconduct. The court also agreed with the defendants that the present statute, like a predecessor statute that had previously been held to be facially unconstitutional; *Dorman* v. *Satti*, 862 F.2d 432 (2d Cir. 1988), cert. denied, 490 U.S. 1099, 109 S. Ct. 2450, 104 L. Ed. 2d 1005 (1989); implicates the communicative aspect of the conduct it proscribes and thus falls within the constraints of the first amendment's protection of free speech. The court concluded, nevertheless, that the statute meets the substantive requirements for the constitutional validity of a statute that implicates first amendment rights. The court agreed with the state that the statute is content-neutral and that its restrictions are narrowly tailored to serve a significant governmental interest. The court

[4] Because of the defendants' failure to brief the unconstitutionality of the statute as applied to them, the trial court expressly declined to consider this issue. In their appellate brief, the defendants agree that no such issue is presently before this court.

then rejected the defendants' claim of vagueness and overbreadth, in part by narrowly construing some of the provisions contained in the statute.

In their appeal, the defendants reiterate the contention, on which they prevailed in the trial court, that § 53a-183a implicates first amendment rights. They also argue, contrary to the conclusion of the trial court, that the statute is invalid on any one of the following theories: (1) it enacts a content-based constraint on free speech; (2) even if it is content-neutral, it fails to meet the constitutional requirements for a statute that regulates expressive conduct in a traditional public forum insofar as it has not been narrowly tailored to serve a compelling state interest; or (3) even if it is content-neutral and does not regulate protected activity in a traditional public forum, its provisions are (a) facially overbroad or (b) unconstitutionally vague.

The state disputes each of the defendants' contentions. The state maintains that § 53a-183a is directed only at conduct and, therefore, that it does not implicate first amendment rights at all. Even if the act is held to regulate some aspects of expressive conduct, however, the state argues that the statute is content-neutral, protects an important state interest, and is narrowly tailored. The state further maintains that any unresolved question about the nature of the state's interest in regulating interference with hunting requires a remand for the evidentiary showing that the trial court improperly precluded by granting the defendants' motions in limine.

I

An essential predicate of the defendants' first amendment challenge to § 53a-183a is that the statute implicates free speech. The first issue before us, therefore, is whether the trial court correctly ruled that the harassment and interference with hunting proscribed

by the statute encompasses communicative as well as noncommunicative conduct. We agree with the trial court.

The Supreme Court of the United States "has applied First Amendment scrutiny to a statute regulating conduct which has the incidental effect of burdening the expression of a particular political opinion." *Arcara* v. *Cloud Books, Inc.*, 478 U.S. 697, 702, 106 S. Ct. 3172, 92 L. Ed. 2d 568 (1986); see *Texas* v. *Johnson*, 491 U.S. 397, 406–407, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989); *Clark* v. *Community for Creative Non-Violence*, 468 U.S. 288, 297–98, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984); *United States* v. *O'Brien*, 391 U.S. 367, 376–77, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968). We have applied such scrutiny to a statute that "could, if drafted ambiguously, impinge upon rights of expression protected by the first amendment . . . ." *State* v. *Cavallo*, 200 Conn. 664, 671, 513 A.2d 646 (1986). For first amendment purposes, facial constitutional scrutiny of a criminal statute is warranted if the statute makes unlawful "a substantial amount of constitutionally protected conduct," even if other parts of the statute may have a legitimate application. (Internal quotation marks omitted.) *Houston* v. *Hill*, 482 U.S. 451, 458–59, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987); *State* v. *Pickering*, 180 Conn. 54, 57 n.3, 428 A.2d 322 (1980).

Without expressly distinguishing these precedents, the state maintains that the conduct prohibited by § 53a-183a does not implicate the first amendment at all. The state contends that interference with another person's lawful conduct, particularly when such interference may be difficult to avoid, falls entirely outside of the ambit of free speech analysis. The state principally relies, for this argument, on cases in which the United States Supreme Court has upheld governmental prohibition of conduct such as soliciting at airports; *International Society for Krishna Consciousness, Inc.*

v. *Lee,* 505 U.S. , 112 S. Ct. 2701, 120 L. Ed. 2d 541 (1992); picketing before a specific residence; *Frisby* v. *Schultz,* 487 U.S. 474, 108 S. Ct. 2495, 101 L. Ed. 2d 420 (1988); congregating near an embassy; *Boos* v. *Barry,* 485 U.S. 312, 108 S. Ct. 1157, 99 L. Ed. 2d 333 (1988); and camping overnight in a public park. *Clark* v. *Community for Creative Non-Violence,* supra.

These cases, however, do not support the state's argument. Although the United States Supreme Court ultimately concluded in each case that the governmental regulation did not violate the first amendment, the court did not bypass first amendment considerations in arriving at these results. "[I]t is now settled that constitutionally protected forms of communication include parades, dances, artistic expression, picketing, wearing arm bands, burning flags and crosses, commercial advertising, charitable solicitation, rock music, some libelous false statements, and perhaps even sleeping in a public park." J. Stevens, "The Freedom of Speech," 102 Yale L.J. 1293, 1298 (1993). The governing federal case law provides no authority for a per se exclusion of expressive conduct, even that which interferes with another's lawful conduct, from the scrutiny required by the first amendment.

For present purposes, it is sufficient to note that the first amendment threshold is crossed by subsection (b) (1) of § 53a-183a, which criminalizes conduct intended to disturb wildlife while someone is lawfully engaged in hunting, because such interference may be verbal as well as physical. See *Dorman* v. *Satti,* supra, 436–37. We conclude, therefore, that § 53a-183a implicates the first amendment.

II

The manner in which constitutional scrutiny is applied to a statute regulating expressive conduct on public property depends, in the first instance, on whether the

statute's proscriptions are content-based or content-neutral. "The First Amendment generally prevents government from proscribing speech . . . or even expressive conduct . . . because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid." (Citations omitted.) *R. A. V.* v. *St. Paul,* 505 U.S. , 112 S. Ct. 2538, 2542, 120 L. Ed. 2d 305 (1992); *Texas* v. *Johnson,* supra, 406; *Boos* v. *Barry,* supra, 321. By contrast, proscriptions that are justified without reference to the content of the regulated speech, and thus are content-neutral, are analyzed under a forum-based approach. "In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the State to limit expressive activity are sharply circumscribed. . . . In these quintessential public forums, the government may . . . enforce regulations of the time, place, and manner or expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. . . . [On p]ublic property which is not by tradition or designation a forum for public communication . . . the State may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry Education Assn.* v. *Perry Local Educators' Assn.,* 460 U.S. 37, 45–46, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983); see also *International Society for Krishna Consciousness, Inc.* v. *Lee,* supra, 2705–2706; *Frisby* v. *Schultz,* supra, 479–81; see generally L. Tribe, American Constitutional Law (2d Ed. 1988) § 12-2.

The trial court concluded that § 53a-183a was content-neutral on its face, because the statute penalizes intentional or knowing interference with hunting, in one of the specific ways described in the statute,

without regard to the content of the communicative conduct that may constitute such interference. For example, intentional noisemaking for the purpose of harassing a hunter would fall within the statute regardless of whether the noisemaker was motivated by a philosophical commitment to the protection of animal rights, by a determination to protest the hunter's choice of weapon or by a felt need to engage in public prayer. We agree with the trial court.

The defendants recognize that the provisions of § 53a-183a do not, in terms, impose criminal liability because of the content of the communication that intentionally interferes with protected hunting activity. They maintain, however, that the statute's proscriptions are nonetheless content-based for three principal reasons. We disagree.

First, the defendants argue that the breadth of its provisions ensures that the statute will be enforced only against those who, by their words or conduct, seek to convey a particular message. The possibility that a statute permits excessive prosecutorial discretion is relevant to a consideration of statutory overbreadth, but does not itself convert a facially content-neutral restriction into one that is content-based. In *Houston* v. *Hill,* supra, 459, 465–67, for example, on which the defendants rely for their argument of facial overbreadth, a content-neutral statute penalizing the interruption of a police officer in the performance of his or her duties was invalidated because it was not sufficiently narrowly tailored, but the United States Supreme Court did not suggest that the statute thereby became content-based.

Second, the defendants maintain that the legislative history of § 53a-183a demonstrates that it was enacted for the sole purpose of protecting hunters from anti-hunting activists. Just as legislative history cannot add words to a statute that it does not contain; *Furstein*

v. *Hill,* 218 Conn. 610, 622, 590 A.2d 939 (1991); *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168, 355 A.2d 39 (1974); so such history cannot render unconstitutional a statute that meets constitutional standards on its face. A statute that is otherwise constitutional does not become invalid "on the basis of an alleged illicit legislative motive." *United States* v. *O'Brien,* supra, 383.

Third, the defendants urge us to conclude that the proscriptions in § 53a-183a will fall disproportionately upon the shoulders of antihunting groups. Neither the statute itself nor the record at trial substantiates this assertion. This case is, therefore, unlike *Minneapolis Star & Tribune Co.* v. *Minnesota Commissioner of Revenue,* 460 U.S. 575, 586, 103 S. Ct. 1365, 75 L. Ed. 2d 295 (1983), in which a state use tax was held unconstitutional because by its terms it expressly singled out the press for special tax treatment.

Contrary to the defendants' assertions, we are therefore persuaded that § 53a-183a is content-neutral because it restricts *all* the expressive conduct proscribed by its terms, whenever such expressive conduct intentionally or wrongfully interferes with hunting. As in *Clark* v. *Community for Creative Non-Violence,* supra, 295, the statute does not, on its face, single out a particular point of view for discriminatory treatment. In this regard, we see no viable distinction between the regulation of camping in a public park and the regulation of interference with hunting in a public park.

### III

In analyzing the validity, under the first amendment, of a content-neutral statute that regulates expressive conduct on public property, a court must consider whether the property is a public or nonpublic forum and the nature and the seriousness of the state interest that purports to justify the regulation. The trial

court undertook a searching analysis of the provisions of § 53a-183a and concluded that the statute, properly narrowed in certain salient ways, passed constitutional muster. The court, however, assumed the sufficiency of the state's interest without permitting the state to offer evidence about the public interest in preventing the intentional harassment of hunters.

The defendants maintain that it would be inappropriate to engage in any further analysis of the validity of § 53a-183a, even if it is held to be content-neutral, because the decision of the United States Court of Appeals for the Second Circuit in *Dorman* v. *Satti,* supra, definitively resolves the issue of the strength of the state's interest against the state. That court held a predecessor statute to § 53a-183a to be unconstitutional because there had been "no showing that protecting hunters from harassment constitutes a compelling state interest." Id., 437. The defendants urge us to conclude, in reliance on *Dorman* v. *Satti,* supra, that the state is collaterally estopped from relitigating its interest in proscribing the harassment of hunters.

Collateral estoppel, or issue preclusion, prevents relitigation of an issue that has been determined in a prior suit "when that issue was actually litigated and necessarily determined in [the] prior action . . . ." (Internal quotation marks omitted.) *Scalzo* v. *Danbury,* 224 Conn. 124, 128, 617 A.2d 440 (1992). "An issue is 'actually litigated' if it is properly raised in the pleadings, submitted for determination, and in fact determined. [1 Restatement (Second), Judgments § 27, comment d (1982).] If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." Id., 128–29. Collateral estoppel does not bar relitigation of a nonessential issue because such an issue may not have been afforded careful deliberation and analysis. Id., 129 n.5.

We agree with the state that the defendants' argument of collateral estoppel must be rejected. In *Dorman* v. *Satti,* supra, the Second Circuit analyzed the predecessor statute to § 53a-183a on two alternate assumptions and concluded that the statute was unconstitutional under either analysis. Id., 437. First, the court, assuming that the statute was content-based, determined that it did not pass the strict judicial scrutiny required for content-based regulations, which carry a presumption of unconstitutionality. The court determined that the state had not shown a compelling state interest for the regulation and that the statute was not narrowly tailored to any "putative" purpose. Id. Second, the court held that, even if the statute were content-neutral, it was invalid because it was an unreasonable regulation of the time, place or manner of speech. Id.

Relitigation in this case of the state's interest in preventing interference with hunting is not precluded by the Second Circuit's decision in *Dorman* because that court's conclusion that the state had not shown a compelling interest was not essential to the court's holding. Rather, that conclusion was one of three alternate grounds for invalidating the statute.

Moreover, although the Second Circuit concluded that the state had not established a compelling interest sufficient to overcome the presumptively unconstitutional content-based statute, we have already determined that the present § 53a-183a, whose terms the Second Circuit had no occasion to consider, is content-neutral. As a content-neutral statute affecting speech, § 53a-183a is valid without a showing of a *compelling* state interest. The appropriate threshold for a content-neutral regulation of free speech in a state park depends upon whether the park is characterized as a

public or nonpublic forum.[5] If the park is a traditional public forum, as the defendants contend, § 53a-183a must advance a *significant* state interest. If the park is a nonpublic forum, as the state contends, § 53a-183a must advance a *reasonable* state interest. See *International Society for Krishna Consciousness, Inc.* v. *Lee,* supra; *Perry Education Assn.* v. *Perry Local Educators' Assn.,* supra. Because these are issues that the Second Circuit did not address, the principle of collateral estoppel does not foreclose plenary consideration at this time of the state's interest in preventing interference with hunting.

Although we are therefore persuaded that this issue is properly before us, we are also persuaded that a more complete factual record would assist us in resolving this question. The defendants' motion in limine, which the trial court granted, precluded the state from introducing evidence concerning the public interest in the protection of hunters from intentional harassment. The defendants' motion should have been denied.

Accordingly, we remand this case to the trial court for an evidentiary hearing to determine the nature and the extent of the public interest served by § 53a-183a. Although neither the state nor the defendants sought at trial to make an evidentiary showing relevant to a determination of whether the public parks where hunting is permissible are public fora, the trial court should permit an evidentiary inquiry in order to enable it to make a finding on this issue as well.

The denial of the motions to dismiss is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion CALLAHAN, NORCOTT and SANTANIELLO, Js., concurred.

---

[5] We recognize that General Statutes § 53a-183a (b) (7) applies to interference with hunting on private property. The statute nonetheless cannot be found to be constitutional unless its regulation of public property meets the standards imposed by the first amendment.

BERDON, J., dissenting and concurring in part. There is no question that the current Connecticut Hunter Harassment Act; General Statutes § 53a-183a;[1] like its predecessor,[2] "appear[s] by its terms to be content-neutral," but is clearly "designed to protect hunters from conduct—whether verbal or otherwise—by those opposed to hunting." *Dorman* v. *Satti,* 862 F.2d 432, 437 (2d Cir. 1988), cert. denied, 490 U.S. 1099, 109 S. Ct. 2450, 104 L. Ed. 2d 1005 (1989).

The legislature attempted to repair the statute by incorporating an element of intent. Nevertheless, as the defendants point out, a protestor can be convicted of violating the statute simply by voicing his or her opposition to the taking of wildlife in a manner that has the incidental effect of impeding or interfering with a hunter. During the debate on the floor of the House of Representatives, Representative Patricia A. Dillon described numerous hypothetical situations in an attempt to discern the line between conduct that could result in prosecution and conduct that would be exempt from prosecution. 33 H.R. Proc., Pt. 30, 1990 Sess., pp. 10,651–10,655. In response to one hypothetical situation, a proponent of the bill explained that the conduct had to be intentional and had to take place when someone was trying to hunt game. He further replied: "[I]f you went on that property, sat on a log, kept your mouth shut and didn't wave your hands and kept quiet, you wouldn't be [in violation] of this statute." 33 H.R. Proc., Pt. 30, 1990 Sess., p. 10,653. The defendant argues that if the same person went into the woods to speak about "the joys of hunting and the sanctity of the rights of hunters, this expressive activity [would] not violate the Act."

[1] See footnote 1 of the majority opinion.

[2] The first Connecticut Hunter Harassment Act, enacted in 1985, was held to be facially unconstitutional. *Dorman* v. *Satti,* 862 F.2d 432 (2d Cir. 1988), cert. denied, 490 U.S. 1099, 109 S. Ct. 2450, 104 L. Ed. 2d 1005 (1989).

What is particularly troubling to me is that § 53a-183a (b) provides that "[a] person violates [the statute] when he intentionally or knowingly . . . (2) blocks, impedes or *otherwise harasses* another person who is engaged in the process of lawfully taking wildlife . . . ." (Emphasis added.) The trial court's attempt to narrow this broad sweeping text with limiting judicial gloss is inappropriate when the plain language of the statute is not susceptible to that construction. *Dorman* v. *Satti,* supra, 436. To suggest that the phrase "otherwise harass," which could pertain to virtually any type of conduct, applies "only to 'core criminal conduct' . . . [is] tantamount to [having the court] 'rewrite [the] statute.' " Id. "Clearly, this court lacks the authority to reshape public policy by construing a statute in a manner that alters its inherent meaning." *State* v. *Proto,* 203 Conn. 682, 698, 526 A.2d 1297 (1987).

Relying on *United States* v. *O'Brien,* 391 U.S. 367, 383, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968), the majority circumvents the legislative history of § 53a-183a by suggesting that a statute that is otherwise constitutional does not become invalid "on the basis of an alleged illicit legislative motive." I disagree. As Professor Lawrence H. Tribe points out: "[T]he broad statement of the Court in *O'Brien* concerning the limited relevance of legislative motive in constitutional adjudication must be strongly qualified. In *Washington* v. *Davis,* [426 U.S. 229, 244 n.11, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976)], Justice White wrote for the majority: 'To the extent that [some of our cases suggest] a generally applicable proposition that legislative purpose is irrelevant in constitutional adjudication, our prior cases . . . are to the contrary.' " L. Tribe, American Constitutional Law (2d Ed. 1988) § 12-6, p. 825.

The legislative history of both the current statute and its predecessor indicates that the legislature intended, at least in part, to insulate hunters from expressive speech by persons opposed to hunting. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1990 Sess., pp. 433–38, 497–501, 517–18, 523–24, 568, 615–16, 665–77; 33 H.R. Proc., Pt. 30, 1990 Sess., pp. 10,642–10,655; 33 S. Proc., Pt. 9, 1990 Sess., pp. 2857–58, and Pt. 10, pp. 3236–39; see also *Dorman* v. *Satti,* 678 F. Sup. 375, 377 n.2 (D. Conn. 1988).

Taking into consideration the text of § 53a-183a, its historic background and the legislative motive, I conclude that it is a content-based restriction. "For the State to enforce a *content-based exclusion* it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *Dorman* v. *Satti,* supra, 862 F.2d 437.

Although in *Dorman* v. *Satti,* supra, 862 F.2d 437, there was no "showing that protecting hunters from harassment constitutes a compelling state interest," I believe that the state should be given an opportunity to demonstrate such an interest. The trial court precluded this showing by granting the defendants' motions in limine. Accordingly, I agree with the majority that we should remand the case to the trial court, but I do not believe that the remand should focus on whether the legislation advances a *significant* state purpose. Rather, the trial court should determine whether the statute advances a *compelling state interest,* and if so, whether the statute is *narrowly tailored*

to achieve that end and "leave[s] open *ample alternative channels of communication.*" (Emphasis added; internal quotation marks omitted.) Id.

To some, the speech at issue, and the message it seeks to convey, may be considered annoying and, indeed, disturbing. Nevertheless, democracy requires that we have the right to express our thoughts on public land. "If all mankind minus one were of one opinion and only one person were of the contrary opinion, mankind would be no more justified in silencing that person than he, if he had the power, would be justified in silencing mankind . . . . If the opinion is right, they are deprived of the opportunity of exchanging error for truth; if wrong, they lose, what is almost as great a benefit, the clearer perception and livelier impression of truth, produced by its collision with error." John Stuart Mill, On Liberty (1859). The first amendment of the United States constitution means exactly what it states—there shall be no law "abridging the freedom of speech." The Connecticut Hunter Harassment Act, stripped of its garb, was enacted to suppress speech.

Accordingly, I agree that the case should be remanded to the trial court, but respectfully disagree on the test to be applied.