[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
I
The plaintiff in the present action is David Morascini, who owns and operates The Palace Cafe Restaurant [the Palace] a nightclub located in Stafford Springs Connecticut through his company, Rock-It, Corporation. The defendants, each being sued in their official capacity, are: 1) Nicholas CT Page 1667 A. Cioffi, the (now former) Commissioner of Public Safety and Commanding Officer for the Division of Connecticut State Police; 2) Ray Oulette, Deputy Commander of the Division of State Police; 3) Lieutenant Peter Plante, Commanding Officer for Troop C of the Connecticut State Police; and 4) Major John Jacewicz, eastern district Commander of the Connecticut State Police.
In his three count amended complaint, the plaintiff alleges that on October 8, 1990, he booked the rap group 2 Live Crew to perform at the Palace for the night of October 12-13, 1990. On October 10, 1990, he was informed that the state police had determined that eight to ten officers were necessary to assure security at the performance and that he was responsible for paying the cost for this security. The plaintiff alleges that he had never in the past had state police officers stationed at the Palace for a performance and had never been charged for police services. The complaint further states that on October 11, 1990, defendant Jacewicz told the plaintiff that the state police's request was predicated upon General Statutes § 7-284. On the same date, the defendants conducted an inspection to determine the club's capacity. On October 12, 1990, the plaintiff was informed by the defendants that the performance would be shut down if the plaintiff did not post $4200 prior to the performance; following intervention of plaintiff's counsel, however, the defendants agreed not to seek prepayment. The defendants insisted, however, on providing a police presence at the performance and indicated to the plaintiff that they would seek reimbursement for these services at a later date.
Despite his objection to the imposition of the fee, the plaintiff elected to go on with the performance. At approximately 7:00 p. m. on October 12, 1990, twelve to fifteen state police officers arrived at the plaintiff's nightclub and remained on the premises until approximately 2: 30 a.m. 2 Live Crew began their performance in front of an audience of 200-250 people at approximately 1:30 a.m. on October 13, 1990; the performance proceeded without incident.
On November 13, 1990, the plaintiff received a bill in the amount of $1991. 74 for police protection at the 2 Live Crew concert. On November 30, 1990, plaintiff's counsel wrote to the Office of the Attorney General requesting that the bill be withdrawn on the ground that the imposition of the bill CT Page 1668 violated the plaintiff's constitutional rights. On January 31, 1991, the defendants rejected this request.
The plaintiff seeks a judgment declaring General Statutes § 7-284 unconstitutional under both the state and federal constitutions and inapplicable to concerts and other events that enjoy the protection of the state and federal constitutions, a preliminary and permanent injunction enjoining the defendants from collecting payment for police services at the October 12-13, 1990, 2 Live Crew performance and such performances in the future, and an award of attorneys' fees under 42 U.S.C. § 1988.
Specifically, in the first count of the amended complaint, the plaintiff alleges that General Statutes § 7-284
is unconstitutional under the first and fourteenth amendments to the United States Constitution and violative of 42 U.S.C. § 1983
because: it shifts the costs of police protection to the speaker; it vests the defendants with "standardless discretion" to decide what events need protection, what circumstances determine the need for protection, and how much protection is necessary; and it operates as a prior restraint upon speech and imposes a penalty for the exercise of speech. In the second count, the plaintiff asserts that General Statutes § 7-284 is unconstitutional under article first, §§ 4 and 5, of the Connecticut Constitution. In the third count, the plaintiff alleges that the defendants' actions, in requiring a fee from the plaintiff, were ultra vires and beyond the scope of the defendants' authority created by General Statutes § 7-284.
The defendants have denied the allegations and have filed a counterclaim alleging that the plaintiff was provided with police services for which he must reimburse the defendants.
The plaintiff has now filed a motion for summary judgment and the defendants have filed a cross-motion for summary judgment. For the reasons stated hereinafter, this court finds the statute, as applied to concerts and other events involving protected speech, violative of the First Amendment.
 II A.
CT Page 1669
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 384. In ruling on the summary judgment motion, "the trial court [is] limited to deciding whether an issue of fact exist[s], [and may] not try that issue if it [does] exist." Batick v. Seymour, 186 Conn. 632, 647,443 A.2d 471 (1982), quoting Associates Discount Corp. v. Smith'sLincoln-Mercury Sales, Inc., 153 Conn. 176, 180, 214 A.2d 909
(1965). The party moving for summary judgment "has the burden of showing the nonexistence of any material fact . . . .",Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 317,477 A.2d 1005 (1984) and "that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Batick v. Seymour, supra, 186 Conn. 647. The party resisting summary judgment "must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Scinto v. Stamm,224 Conn. 524, 530, 620 A.2d 99 (1993).
In the present case, the parties agree that there is no dispute regarding the material factual issues giving rise to this controversy. The parties have each advanced several arguments in regard to the application and constitutionality of § 7-284; each of these arguments will be addressed separately below.
 B
General Statutes § 7-284, entitled "Police protection at places of amusement," provides:
 When police protection is necessary or required at any boxing bout or wresting match, place of public amusement, sport contest or hockey, baseball or basketball game, or any other exhibition or contest, which is being held or is to be held in any municipality, the amount of such protection necessary shall be determined and shall be furnished by (1) the chief or superintendent of CT Page 1670 the police department in any municipality having an organized or paid police department or (2) the commanding officer of the state police troop having jurisdiction over the municipality in any municipality having a resident state trooper. Any such protection shall be paid for by the person or persons operating, conducting or promoting such game, exhibition or contest. (emphasis supplied).
The plaintiff asserts that General Statutes § 7-284 does not apply to the Palace because this provision does not refer to concerts or musical events of any kind. The plaintiff cites the case of City of West Haven v. Dean, 6 Conn. Cir. 629, 292 A.2d 263 (1971), cert. denied, 163 Conn. 621,290 A.2d 357 (1972), in which the court held that a restaurant that provided live music for dancing was not a "place of public amusement" pursuant to § 7-284 because the restaurant was not transformed into a "place of public amusement" merely because that restaurant provided live music for dancing. The plaintiff stresses that the legislature has amended § 7-284
several times since the Dean decision was rendered[1] and, despite those "reenactments," has let the Dean decision's construction of § 7-284 stand.
The defendants reply that the Palace falls within the definition of "place of public amusement" and/or an "exhibition" and that, consequently, § 7-284 applies in the present case. They further assert that this court should accord deference to the application of the statute by the agency charged with its enforcement, which, in the present case, was the Connecticut State Police.
"It is the duty of the court to interpret statutes as they are written . . . and not by construction read into statutes provisions which are not clearly stated." (Citations omitted; internal quotation marks omitted.) State v. Johnson,227 Conn. 534, 542, 630 A.2d 1059 (1993). See Forsyth v.Rowe, 226 Conn. 818, 828, 629 A.2d 379 (1993); State v.Dupree, 196 Conn. 655, 660, 495 A.2d 691, cert. denied,474 U.S. 951, 106 S.Ct. 318, 88 L.Ed.2d 301 (1985). Where a statute is clear and unambiguous, there is no room for CT Page 1671 statutory construction. University of Connecticut v. Freedomof Information Commission, 217 Conn. 322, 328, 585 A.2d 690
(1991); Wright v. Commissioner of Correction, 216 Conn. 220,224-25, 578 A.2d 1071 (1990). General Statutes § 1-1(a) provides that, in construing statutes, "words and phrases shall be construed according to the commonly approved usage of the language." Furthermore, it is proper for the court to look at dictionary definitions for the purposes of clarifying the ordinary meaning of various terms, AirKaman, Inc. v.Groppo, 221 Conn. 751, 756-57, 607 A.2d 410 (1992); Young v.Marx, 24 Conn. App. 81, 84, 585 A.2d 1253 (1991); and, if the language of a statute is clear and unambiguous, the court need not reference its history and purpose. Winslow v.Lewis-Shepard, Inc., 216 Conn. 533, 538, 582 A.2d 1174 (1990); see State v. Ross, 230 Conn. 183, 200, ___ A.2d ___ (1994).
"The word `amusement' means anything that amuses, as an entertainment or spectacle . . . . Radcliffe v. Query,153 S.C. 76, 150 S.E. 352." 4 Am.Jur.2d, Amusements and Exhibitions § 1, p. 121, n. 1. "A statute providing for the regulation of places of amusement includes all classes of public exhibitions, such as are usually conducted upon a stage for the observation and amusement of the public. Hence, a place of public amusement where concerts are given upon a stage is within its terms. New York v. Eden Musee AmericanCo., 102 N.Y. 593, 8 N.E. 40." 4 Am.Jur.2d, Amusements and Exhibitions § 1, p. 121, n. 1. "Theaters and concert halls are places of public amusement; restaurants and hotels, places of public accommodation." (Footnote omitted.) 4 Am.Jur.2d, Amusements and Exhibitions § 1, p. 122, citing People ex rel.McShane v. Keller, 96 Misc. 92, 161 N.Y.S. 132 (1916).
Ballentine's Law Dictionary 950 (3d ed. 1969) defines "place of amusement" as "[a] place to which people resort for diversion or pleasure, some being exhibitive and others participative, the former being represented by theaters, stadiums, and so forth and the latter by skating rinks, bowling alleys, and so forth." (Citation omitted.) Id., 950. To exhibit is "[t]o show or display . . . ." Black's Law Dictionary 573 (6th ed. 1990). An exhibition is "[a] fair; a show; a presentation of works of art or of trade and commerce for viewing by the public or a class of persons." Ballentine's Law Dictionary 436 (3d ed. 1969).
This court believes that City of West Haven v. Dean, CT Page 1672 supra, 6 Conn. Cir. 629, is distinguishable because, in that case, the court held that a restaurant retained that character, despite the fact that it supplied live music for dancing. In the present case, however, the Palace is described as a nightclub where the plaintiff "engages many musicians to perform . . . ." Amended Complaint, para. 1. In addition, the Palace, a venue in which musical acts are featured, fits within the definition of a "place of amusement" as utilized in § 7-284. This court finds that § 7-284 is applicable to the Palace in the present case.
 C. 1.
As quoted above, § 7-284 provides, in part, that necessary amount of protection "shall be determined and shall be furnished by (1) the chief or superintendent of the policedepartment in any municipality having an organized or paidpolice department or (2) the commanding officer of the statepolice troop having jurisdiction over the municipality in anymunicipality having a resident state trooper." In support of his motion for summary judgment, the plaintiff asserts that § 7-284 is inapplicable to the Palace because Stafford Springs, the town in which the Palace is located, does not have a police department or a resident state trooper. As a result of this situation, this decision could stop here with a finding for the plaintiff. The defendant police officials simply do not fall within the terms of the statute. This court cannot read into the statute provisions not clearly stated. State v.Johnson, supra, 227 Conn. 542.
The plaintiff and defendants, however, urge this court to avoid deciding the present case on this narrow ground[2] and to decide the issue of § 7-284's constitutionality in the interests of judicial economy. They claim that the public interest will be frustrated if the court postpones a decision on the issue of § 7-284's constitutionality because future litigation on this issue will invariably occur.
2.
As a general rule, "[c]onstitutional issues are not considered unless absolutely necessary to the decision of a case . . . or unless sufficient public interest warrants such CT Page 1673 a review." State v. DellaCamera, 166 Conn. 557, 560-61,353 A.2d 750 (1974). See Perry v. Perry, 222 Conn. 799,611 A.2d 400 (1992); Chotkowski v. State, 213 Conn. 13, 16-17,566 A.2d 419 (1989); Moore v. McNamara, 201 Conn. 16, 20, 513 A.2d 660
(1986) (The "court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case."); State v. Williams,200 Conn. 310, 511 A.2d 1000 (1986); State v. Zach, 198 Conn. 168,502 A.2d 896 (1985).
In State v. Sul, 146 Conn. 78, 147 A.2d 686 (1958), the defendant was charged with the crime of possession of obscene literature in violation of a state statute. Id., 79-80. The defendant challenged the constitutionality of the statute by demurrer at the trial stage. His demurrer was overruled. Id., 80. The court stated that
 [i]f this was not a criminal conviction under a statute defining a serious crime and imposing a substantial penalty, we would be constrained to rule that the defendant, by entering a plea of not guilty after his demurrer was overruled and proceeding to a trial during which he invoked no rulings on questions on the constitutionality of the statute to furnish bases for assignments of error on appeal, is precluded from pursuing on this appeal any error claimed in the overruling of his demurrer. . . . The construction of [the statute], however, involves a matter of public interest and importance because of recent decisions of the Supreme Court of the United States involving statutes of other jurisdictions similar to it. Consequently, we shall pass upon the constitutional questions raised . . . .
(Citations omitted.) Id., 83-84. CT Page 1674
In Cyphers v. Allyn, 142 Conn. 699, 118 A.2d 318 (1955), the court considered the constitutionality of a statute concerning the regulation and licensing of real estate salesmen and brokers. The court stated that "[w]hether there is a valid reason for refusing to entertain this action for declaratory judgment need not be analyzed. The reservation presents questions of such public interest with respect to real estate brokers and agents, that, in our discretion, we have decided to pass upon them." Id., 702.
This case presents issues that require resolution and will promote the public interest by saving the judicial resources that will inevitably result from future litigation concerning § 7-284. See Helbig v. Zoning Commission,185 Conn. 294, 300, 440 A.2d 940 (1981) ("We agree with the claim made by the defendants in their reply brief that `these appeals present a situation where further litigation could be avoided by deciding the issue of the constitutionality of 13.7.' Thus, we reach that issue."); Arway v. Bloom, 29 Conn. App. 469,482, 615 A.2d 1075 (1992); Estate of Filipek v.Zoning Board of Appeals, Superior Court, Judicial District of Hartford/New Britain at New Britain, No. CV 92-0454234 (Dec. 21, 1993, Parker, J.). It is axiomatic that "a validly enacted statute carries with it a strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt." (Citations omitted.) Fleming v. Garnett, 231 Conn. 77, 88, ___ A.2d ___ (1994); see Addessi v. Connecticut Light Power Co., 10 Conn. App. 86,87, 521 A.2d 605 (1987).
 D. 1.
The defendants do not dispute that the 2 Live Crew performance involves speech protected by the First Amendment. "Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee." (Citations omitted.) Schad v. Borough of Mount Ephraim,452 U.S. 61, 65, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); seeHusti v. Zuckerman Property Enterprises, Ltd., 199 Conn. 575,580, 508 A.2d 735 (1986); State v. Linares, 32 Conn. App. 656, CT Page 1675 671, 630 A.2d 1340 (1993)("Constitutionally protected speech includes many things other than thoughts expressed in words. Protected speech can be parades, music, solicitation and receipt of funds, and the use of an amplifier to increase the volume of music electronically."). "Music is one of the oldest forms of human expression. . . . Music, as a form of expression and communication, is protected under theFirst Amendment." Ward v. Rock Against Racism, 491 U.S. 781, 790,109 S.Ct. 2746, 105 L.Ed.2d 661, reh'g denied, 492 U.S. 937,110 S.Ct. 24, 106 L.Ed.2d 636 (1989).
2.
The plaintiff's constitutional attack on § 7-284 is threefold: (1) it vests standardless discretion with the police and constitutes a prior restraint; (2) its enforcement history is content based and (3) it has been applied in a content based manner. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, p. 10. The defendants counter that § 7-284 is not only not a prior restraint, and a "reasonable restriction" on the plaintiff's right to promote a commercial event, but also not content based. Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, pp. 18-19.
In Ward v. Rock Against Racism, supra, 491 U.S. 795 n. 5, the court stated that "the regulations we have found invalid as prior restraints have `had this in common: they gave public officials the power to deny the use of a forum in advance of actual expression.'" Id., quoting Southeastern PromotionsLtd. v. Conrad, 420 U.S. 546, 553, 95 S.Ct. 1239,43 L.Ed.2d 448 (1975). The court framed the relevant question as "whether the challenged regulation authorizes suppression of speech in advance of its expression . . . ." Ward v. RockAgainst Racism, supra, 491 U.S. 795 n. 5.
Section 7-284 merely authorizes a police chief, superintendent, or commanding officer of the state police troop to determine the amount of police protection necessary or required at a place of public amusement, or any other exhibition, with those costs to be imposed on the promoter. This court thus finds that § 7-284 does not act as a prior restraint on free expression because it does not authorize public officials to suppress speech prior to its expression.[3]
The plaintiff's motion for summary judgment is therefore CT Page 1676 denied on this ground. This does not, however, end this inquiry because this court must determine whether the application of § 7-284 was content based. "[T]he prohibition of laws abridging the freedom of speech is not confined to previous constraints . . . ." Schenck v. U.S., 249 U.S. 47,51, 39 S.Ct. 247, 63 L.Ed. 470 (1919).
3.
 a.
"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. International Societyfor Krishna Consciousness, Inc., 452 U.S. 640, 647,101 S.Ct. 2559, 69 L.Ed.2d 298 (1981); however, government regulation impacting on speech rights must be reasonable. Ward v. RockAgainst Racism, supra, 491 U.S. 791.
In Husti v. Zuckerman Property Enterprises, Inc., supra,199 Conn. 575, the Connecticut Supreme Court rejected aFirst Amendment challenge to a Shelton zoning regulation which "prohibit[ed] all outdoor entertainment, regardless of its message, in the residential zone that contain[ed] the defendants club." Id., 581. It noted that "[t]he United States Supreme Court has recently held that a content-neutral zoning regulation that restricts the permissible time, place, and manner of protected speech is constitutional under thefirst amendment if the regulation `is designed to serve a substantial governmental interest and allows for reasonable alternative avenues of communication.'" Id., citing Renton v.Playtime Theaters, Inc., 475 U.S. 41, 50, 106 S Ct. 925,89 L.Ed.2d 29, reh'g denied, 475 U.S. 1132, 106 S.Ct. 1663,90 L.Ed.2d 205 (1986). It is clear to this court that § 7-284 acts as a time, place, or manner regulation upon speech, designed to enhance public safety and relieve problems of crowd and traffic control. See Renton v. Playtime Theaters, Inc., supra, 475 U.S. 46; Village of Belle Terre v. Boraas,416 U.S. 1, 5-6, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); Husti v.Zuckerman Property Enterprises, Ltd., supra, 199 Conn. 581. The plaintiff asserts that § 7-284 provides for an impermissible content-based time, place, or manner regulation on speech because the public officials involved in the present case looked to the content of 2 Live Crew's expression in deciding the amount of police protection necessary at the CT Page 1677 concert.[4] The defendants counter that the statute is content-neutral because the public officials involved only focused on the "secondary effects" of the speech, specifically, predicted problems of crowd and traffic control.
 b.
The United States Supreme Court "`has appliedFirst Amendment scrutiny to a statute regulating conduct which has the incidental effect of burdening the expression of a particular political opinion.'" State v. Ball, 226 Conn. 265,271, 627 A.2d 892 (1993), quoting Arcara v. Cloud Books, Inc., f478 U.S. 697, 702, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986). To pass constitutional muster, "a time, place, and manner regulation must meet three requirements. First, it may not be based upon either the content or subject matter of speech. Second, it must serve a significant governmental interest. And third, it must leave open ample alternative channels for communication of the information." (Citations omitted; internal quotation marks omitted.) Regan v. Time, Inc.,468 U.S. 641, 648, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984); seeState v. Linares, supra, 32 Conn. App. 656.
In Renton v. Playtime Theaters, Inc., supra, 475 U.S. 41, the United States Supreme Court considered the constitutionality of a city ordinance that prevented adult theaters from being located within 1,000 feet of a zoned residential, single, or multiple-family dwelling, church, park, or school. The court stated that "regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the First Amendment." Id., 46-47; see Carey v. Brown, 447 U.S. 455, 462-63, 100 S.Ct. 2286,65 L.Ed.2d 263 (1980); State v. Ball, supra, 226 Conn. 273
("`Content-based regulations are presumptively invalid.'"). The court defined content-neutral regulations as those that "`are justified without reference to the content of the regulated speech.'" (Emphasis in original.) Renton v.Playtime Theaters, Inc., supra, 475 U.S. 48, quoting VirginiaPharmacy Board v. Virginia Citizens Consumer Council, Inc.,425 U.S. 748, 771, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). The court explained that content-neutral time place, or manner regulations "are acceptable so long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication."Renton v. Playtime Theaters, Inc., supra, 475 U.S. 47. The CT Page 1678 court concluded that the Renton ordinance was content-neutral because the ordinance was designed to attack the "undesirable secondary effects" of adult theaters. Id., 48-49.
In Boos v. Barry, 485 U.S. 312, 108 S.Ct. 1157,99 L.Ed.2d 333 (1988), the United States Supreme Court, referring to Renton v. Playtime Theaters, Inc., supra, 475 U.S. 41, stated that "[s]o long as the justifications for regulation have nothing to do with content" such regulation is permissible." Boos v. Barry, supra, 485 U.S. 320. The court proceeded to elucidate the definition of "secondary effects": "[r]egulations that focus on the direct impact of speech on its audience present a different situation [than existed inRenton]. Listeners' reactions to speech are not the type of `secondary effects' we referred to in Renton." Id., 321. The court in Boos held that a statute making it unlawful to display any sign tending to bring a foreign government into "public odium" or "public disrepute" within 500 feet of a foreign embassy was content-based because it was "justifiedonly by reference to the content of speech . . . . and the direct impact that speech has on its listeners." Id. The court concluded that the statute violated the First Amendment because it was a content-based restriction on political speech in public forum that was not narrowly tailored to serve a compelling state interest. Id.
The issue was revisited once more in Forsyth County v.Nationalist Movement, 505 U.S. ___, 112 S.Ct. 2395,120 L.Ed.2d 101 (1992), a case in which the defendant, an affiliate of the Ku Klux Klan, challenged an ordinance that required private persons to prepay a fee of up to $1,000 per day to hold a parade or demonstration. The purpose of the fee was to pay "the cost of necessary and reasonable protection of persons participating in or observing said parades . . ." and the exact amount of the fee was discretionary with the county administrator. Id., 112 S.Ct., 2399. In sustaining the challenge, the court noted that there were no "`narrowly drawn, reasonable and definite standards' . . . guiding the hand of the Forsyth County administrator . . . either in the ordinance or in the county's established practice," and that therefore "[n]othing in the law or its application prevents the official from encouraging some views and discouraging others through the arbitrary application of fees." (Citation omitted.) Id., 2402-03. "The First Amendment prohibits the vesting of such unbridled discretion in a government CT Page 1679 official." Id., 2403. Similar to the statute herein, the Forsyth ordinance's history revealed a pattern of varying implementation. As noted by the plaintiff, "the administrator testified that [when he processed the Nationalist Movement's own application,] he had deliberately kept the fee low by undervaluing the cost of the time he spent processing the application . . . [and] chose not to include any charge for expected security expense," Id., 2402; and on past occasions he had charged different fees to different groups, or had waived fees altogether, when there was no apparent legitimate reason for the differential treatment. Id.
"A statute is presumptively inconsistent with theFirst Amendment if it imposes a financial burden on speakers because of the content of their speech." (Citations omitted.) Simon Schuster, Inc. v. Crime Victims Board, 502 U.S. ___, 112 S.Ct. ___, 116 L.Ed.2d 476, 486-87 (1991). As noted by theForsyth court,
 [t]he fee assessed will depend the administrator's measure of the amount of hostility likely to be created by the speech based on its content. Those wishing to express views unpopular with bottle-throwers, for example, may have to pay more for their permit.
 Although petitioner agrees that the cost of policing relates to content, it contends that the ordinance is content-neutral because it is aimed only at a secondary effect — the cost of maintaining public order. It is clear, however, that, in this case, it cannot be said that the fee's justification `has nothing to do with content.'
 The cost to which petitioner refers are those associated with the public's reaction to the speech. Listeners' reaction to speech is not a content-neutral basis for regulation.
(Citations omitted; emphasis added.) 112 S.Ct., 2403. CT Page 1680
In Invisible Empire Knights of the Ku Klux Klan v. Cityof West Haven, 600 F. Sup. 1427 (D. Conn. 1985), a challenged ordinance required individuals who desired to use the city's parks and recreation facilities to post a bond for "the city's costs of police protection and maintenance." Id., 1433. The court held that "the bond requirement [sought] to impose the cost of police protection on the applicant. This result cannot be permitted." Id. "The First Amendment's protection against governmental abridgement of free expression cannot properly be made to depend on a person's financial ability to engage in public discussion." Buckley v. Valeo, 424 U.S. 1,49, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In InvisibleEmpire, the court concluded that the ordinance at issue "treat[ed] the First Amendment as a privilege to be bought rather than a right to be enjoyed." Id., 1434. The court added that the provision concerning the bond requirement
 also varies that price according to the estimate of the Chief of Police as to crowd size. The effect is to make the cost of the permit greater for groups that will attract a large audience. This is true whether the audience is one welcomed by the speaker, or one which is hostile to the speaker's point of view. The result is that, by threatening loud and numerous opposition, an opposing group can make the amount of the bond (and the actual cost of police protection born by the speaker) prohibitive, effectively nullifying the right of free expression of an unpopular idea.
Id. The court concluded that the bond requirement contained in the ordinance "allow[ed] a hostile group effectively to deny a speaker's constitutional rights by making the exercise of those rights prohibitively expensive." Id., 1435. "The ability of an opposing group to exercise such a `hecklers' veto' is contrary to the very nature of the First Amendment." Id., 1434.
In the present case, § 7-284 allows public officials to evaluate the need and amount of police protection at any CT Page 1681 exhibition or contest or any other place of public amusement. The evidence submitted by the parties in this case clearly establishes that the defendants, in reaching their decision, considered "intelligence" information, which included material from Florida, Rhode Island, and Texas regarding 2 Live Crew concerts there and audience reactions to those concerts. See Deposition of Lieutenant Peter Plante, Commanding Officer of Troop C Barracks, Connecticut State Police pp. 14-15. In his deposition, Lieutenant Plante attests that the defendants had "general intelligence that there were some incidents of violence and trouble at previous 2 Live Crew concerts." Plante Deposition, p. 13, see also Deposition of Bernard Sullivan, concerning his past use of the statute both on the deployment of and billing for the use of police officers.[5]
In invoking § 7-284, the defendants based their decision on the direct impact of speech and the listeners reactions to speech. As stated in Boos v. Barry, supra, 485 U.S. 321, these components are not the secondary effects referred to by the United States Supreme Court in Renton.
 c.
The defendants argue that the statute in the present case is content-neutral, much like the city ordinance that was upheld in Connecticut Theatrical Corporation v. City of NewBritain, 147 Conn. 546, 163 A.2d 548 (1960). In ConnecticutTheatrical, the ordinance required the presence of a police officer during every performance at a movie theater and also required the owner or operator of the theater to pay for these police services. Id., 547. The court in ConnecticutTheatrical held that
 [t]he ordinance is an exercise of the police power of the city, and whether present conditions require the degree of regulation imposed by the ordinance is a matter for the judgment of the legislative body of the city. Courts can interfere only in those extreme cases where the action taken is unreasonable, discriminatory or arbitrary. . . . Every intendment is to be made in favor of the validity of the ordinance, and it is the duty of the CT Page 1682 court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt. The conclusion of the court that in the light of these principles the invalidity of the New Britain ordinance has not been established may not be disturbed.
(Citations omitted.) Id., 553. The facts of the present case and those of Connecticut Theatrical are distinguishable.Connecticut Theatrical concerned an ordinance that required one police officer to be present at all movie performances, and did not allow any official discretion in that regard. In the present case, pursuant to § 7-284, public officials are permitted to determine first whether police protection is required and, if so, how much protection is necessary, with those costs to be imposed upon the owner of the venue.Connecticut Theatrical is not controlling.
 d.
Section 7-284, as applied in the present case, is a content-based regulation that must be assessed under the standards applied to content-based regulations. While governmental regulation based on subject matter has been approved in narrow circumstances, R.A.V. v. St. Paul, 505 U.S. ___, 112 S.Ct. 2538, 120 L.Ed.2d 305, 328 (1992), where a statute is content-based, the court must "subject [it] to the most exacting scrutiny . . . . requir[ing] the State to show that the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." (Citations omitted; internal quotation marks omitted.)Boos v. Barry, supra, 485 U.S. 321; see also Widmar v.Vincent, 454 U.S. 263, 270, 102 S.Ct. 269, 70 L.Ed.2d 440
(1981). Moreover, "[t]he existence of adequate content-neutral alternatives . . . `undercuts significantly' any defense of such a statute." R.A.V. v. St. Paul, supra,120 L.Ed.2d 326, quoting Boos v. Barry, supra, 485 U.S. 329.
There is no question that safety issues addressed by § 7-284
serve a compelling state interest.[6] To be sure, the legislature's goal of providing police protection to patrons of certain events is laudable. However, this statute is not drawn narrowly enough to meet this end. Section § 7-284 allows CT Page 1683 limitless official discretion in determining the need for police protection and the amount of this protection. It allows public officials to impose the costs of police protection upon the speaker or promoter.[7][8] "In the context of financial regulation, it bears repeating . . . that the Government's ability to impose content-based burdens on speech raises the specter that the Government may effectively drive certain ideas or view-points from the marketplace." Simon SchusterInc. v. Crime Victims Board, supra, 116 L.Ed.2d 487. "TheFirst Amendment presumptively places this sort of discrimination beyond the power of the Government." Id. Free speech rights cannot hinge upon a person's financial ability to pay for those rights. See Invisible Empire Knights of theKu Klux Klan v. City of West Haven, supra, 600 F. Sup. 1434;Buckley v. Valeo, supra, 424 U.S. 49.[9]
4.
The defendants finally argue that each of the cases supporting the plaintiff's position are distinguishable because those cases involve the infringement of free speech in public forums. This argument is without merit. Speech rights are, in fact, heightened in the private forum. "[T]he government s need to mediate among various competing uses, including expressive ones, for public streets and facilities is constant and unavoidable . . . its need to regulate temperate speech from the home is surely much less pressing." (Citations omitted.) City of Ladue v. Gilleo, 512 U.S. ___,114 S.Ct. 2038, 129 L.Ed.2d 36, 49 (1994).
 III.
Accordingly, this court finds that the application of § 7-284 to performances of music and other protected speech, including the concert in this case, treats "theFirst Amendment as a privilege to be bought rather than a right to be enjoyed," Invisible Empire Knights of the Ku Klux Klan v.City of West Haven, supra, 600 F. Sup. 1434; and is therefore unconstitutional. The plaintiff's motion for summary judgment is granted and the defendants' cross-motion for summary judgment is denied.
Berger, J.