STATE OF CONNECTICUT *v.* ANGELO JOYNER
(SC 16297)

Borden, Katz, Sullivan, Vertefeuille and Flynn, Js.*

---

\* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued September 20, 2000—officially released March 20, 2001

*Robert M. Spector,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* senior assistant state's attorney, for the appellant (state).

*Mark P. Rademacher,* assistant public defender, for the appellee (defendant).

*Opinion*

SULLIVAN, J. This appeal concerns the possible collateral estoppel effect of a ruling by a habeas court on a subsequent criminal retrial. The defendant, Angelo Joyner, who, after a first trial, was convicted of, inter alia, sexual assault in the first degree in violation of General Statutes (Rev. to 1989) § 53a-70,[1] filed a petition for a writ of habeas corpus. The habeas court granted the defendant's petition on the grounds that the defendant's trial counsel, Samuel Dixon, had had a conflict of interest and had provided ineffective assistance to the defendant. Accordingly, the habeas court ordered a new trial.

The victim died during the period between the end of the first trial and the beginning of the second trial. The defendant sought to exclude from the second trial the now-deceased victim's testimony from the first trial. The dispositive issue in this appeal is whether the second trial court properly ruled that the habeas court's findings of conflict of interest and ineffective assistance of counsel prevented it, under the doctrine of collateral estoppel,[2] from determining whether Dixon's cross-

[1] General Statutes (Rev. to 1989) § 53a-70 provides in relevant part: "(a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person. . . ."

[2] The doctrine of collateral estoppel prohibits the relitigation between the same parties of an issue that has been fully and fairly litigated and determined by a valid, final judgment. See, e.g., *State* v. *McDowell,* 242 Conn. 648, 655, 699 A.2d 987 (1997).

examination of the victim in the first trial satisfied the defendant's right to confront witnesses against him, such that the victim's testimony would be admissible in the new trial.[3]

The defendant argues that, in determining that Dixon had provided him with ineffective assistance of counsel, the habeas court necessarily determined that Dixon's cross-examination of the victim at the first trial had failed to satisfy the confrontation clause of either the federal[4] or Connecticut[5] constitution. This determination, the defendant contends, binds the trial court under the doctrine of collateral estoppel. The state argues that the habeas court did not determine that Dixon's cross-examination failed to satisfy either the federal or state confrontation clause and, therefore, the second trial court is not barred from determining that issue under the doctrine of collateral estoppel. The state further contends that, even if the habeas court had made such a determination, it was only one of many reasons offered for the habeas court's ultimate finding of ineffective assistance and, therefore, is not binding on the second trial court. We agree with the state.

The following background is relevant to our resolution of the state's appeal. On June 28, 1991, a jury found the defendant guilty of three counts of sexual assault in the first degree in violation of § 53a-70, one count of assault in the first degree in violation of General Stat-

---

[3] Prior statements of an unavailable declarant may be admitted if there is some indicia of reliability with which the trier of fact may assess their validity. See *State* v. *Outlaw*, 216 Conn. 492, 505–506, 582 A.2d 751 (1990) (declarant's statements made under oath, defendant represented by counsel, and declarant cross-examined as evidence of reliability).

[4] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[5] Article first, § 8, of the constitution of Connecticut provides in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to be confronted by the witnesses against him . . . ."

utes (Rev. to 1989) § 53a-59 (a) (1),[6] and one count of kidnapping in the first degree in violation of General Statutes (Rev. to 1989) § 53a-92 (a) (2) (A).[7] The defendant filed motions for acquittal and for a new trial on July 12, 1991; both were denied. On July 26, 1991, the defendant was sentenced to fifty years imprisonment.

On September 3, 1991, the defendant appealed to this court from the trial court's judgment, claiming that: (1) the state had presented insufficient evidence to sustain his conviction for assault in the first degree; (2) General Statutes § 53a-13 (a) unconstitutionally had imposed upon him the burden of establishing the defense of mental disease or defect; (3) the trial court had failed to give a curative instruction sua sponte when the state's attorney stated that the jury could consider the defendant's demeanor in the courtroom in evaluating his defense of mental disease or defect; (4) the trial court had abused its discretion in allowing the state to introduce evidence of the defendant's prior misconduct in cross-examining the defendant's psychiatrist; (5) the trial court had improperly denied the defendant's request that the court inspect the victim's mental health records in camera; (6) the trial court had improperly permitted the state's psychiatrist to testify that the defendant had control over his conduct; and (7) the trial court had denied the defendant his constitutional right to testify at trial when it failed to conduct a canvass to determine, on the record, that the defendant's waiver of that right was knowing and voluntary. See *State* v.

---

[6] General Statutes (Rev. to 1989) § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[7] General Statutes (Rev. to 1989) § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

*Joyner*, 225 Conn. 450, 454, 625 A.2d 791 (1993). On May 4, 1993, we affirmed the trial court's judgment. Id., 483.

The defendant, acting pro se, filed a petition for a writ of habeas corpus on May 20, 1993, alleging ineffective assistance of trial counsel. The defendant then amended the petition eleven times to include, inter alia, claims of prosecutorial misconduct and conflict of interest by Dixon. Specifically, he claimed that Dixon previously had represented his deceased father's estate in a wrongful death action. Although Dixon had been expected to distribute approximately $22,700 to each of the decedent's children, including the defendant, from the proceeds of the action, the defendant only received a small portion of his share from Dixon. Without that money, the defendant argued, he had been unable to retain the attorney of his choice in this criminal case. The defendant also claimed that Dixon had told him that any money he had held for the defendant had been garnished as a result of a civil suit brought by the victim. On September 19, 1997, the habeas court, *Rittenband, J.*, found that Dixon had had a conflict of interest in representing the defendant and had provided the defendant with ineffective assistance. Thereafter, the habeas court granted the defendant's petition for a writ of habeas corpus and ordered a new trial.[8]

The victim died in 1992, and, on February 10, 2000, the defendant moved to exclude from the new trial the victim's testimony from the first trial. On February 25,

---

[8] Before the habeas court decided the merits of the defendant's petition, the commissioner of correction filed a motion to disqualify the habeas judge on the ground that the judge was not an impartial fact finder because he had referred the matter involving Dixon to the statewide grievance committee and chief state's attorney for further investigation. See *Joyner* v. *Commissioner of Correction*, 55 Conn. App. 602, 606, 740 A.2d 424 (1999). The trial court denied the commissioner's motion and the Appellate Court affirmed. Id., 614.

2000, the second trial court, *Licari, J.*, granted the defendant's motion to exclude the victim's prior testimony, concluding that it was bound by the findings of the habeas court under the doctrine of collateral estoppel. Specifically, the second trial court found that the habeas court, in order to have reached its decision to grant the defendant's habeas petition, necessarily had determined that Dixon's cross-examination of the victim had been inadequate. On February 28, 2000, the state filed a substitute information, alleging one count of kidnapping in the first degree in violation of § 53a-92 (a), one count of assault in the second degree in violation of General Statutes (Rev. to 1989) § 53a-60 (a) (1),[9] one count of burglary in the first degree in violation of General Statutes § 53a-101 (a) (2),[10] and three counts of sexual assault in the first degree in violation of § 53a-70. The state then requested that the second trial court dismiss the three counts of sexual assault in the first degree "so that [the state] could have a final judgment [from] which [it could] appeal." The second trial court dismissed the three counts of sexual assault in the first degree and granted the state's motion for permission to appeal.

The defendant then was released on a written promise to appear on September 11, 2000, under the conditions that he not contact or attempt to contact the victim's minor child and that he not violate any state or federal criminal laws. The defendant agreed to waive any further benefit from the habeas court's decision,

---

[9] General Statutes (Rev. to 1989) § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person . . . ."

[10] General Statutes § 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and . . . (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone."

as well as any speedy trial rights until the state's appeal was resolved. The state, in turn, agreed that, if it lost its appeal on the sexual assault charges, but was successful in retrying the defendant on the remaining charges, it would not seek a sentence longer than thirty years. This appeal followed.[11]

## I

### JURISDICTION

We first address the potentially dispositive jurisdictional claims. See, e.g., *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 442, 705 A.2d 1012 (1997). The defendant claims that we lack subject matter jurisdiction over this appeal because: (1) the state was the party that obtained a dismissal of the sexual assault charges and did so "without a detailed showing that it could not prosecute the defendant on those charges without the [excluded] testimony [of the victim]"; and (2) the state did not seek dismissal of all charges, but, rather, only of the three counts of sexual assault, and if the state may appeal, it may do so only after a final judgment has been rendered with respect to all of the charges. The state contends that it properly followed the process for appeal described in *State* v. *Ross*, 189 Conn. 42, 454 A.2d 266 (1983). We agree with the state that we have jurisdiction over this appeal.

## A

The defendant first argues that, under *State* v. *Ross*, supra, 189 Conn. 42, in order to appeal from a judgment of dismissal that it had requested, the state must have presented a sufficiently detailed showing that it could not prosecute the defendant on the sexual assault charges without the victim's testimony. We disagree.

---

[11] The state appealed to the Appellate Court on March 1, 2000, and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1 and also expedited the appeal.

In *Ross*, we stated that "[i]f the judgment of dismissal with prejudice had been rendered upon a motion of the defendant under [General Statutes] § 54-56[12] rather than upon [the state's] motion, the state unquestionably could have appealed. We do not believe that the availability of appellate review should turn wholly upon the identity of the party who has invoked judicial recognition of the moribund status of the prosecution." Id., 48–49. Although "[a]n appellant cannot ordinarily claim error in the action of the trial court which he has induced," an exception exists when "a party consents to the entry of a judgment against him when it is the only logical result at which the court could arrive given its previous rulings." Id., 47–48. It would be unfair to force the state to proceed with a case for which it has insufficient evidence to prove guilt because of a suppression order, inasmuch as the state would then be precluded by double jeopardy from seeking subsequent review of that order.[13] See id., 48–49 ("In a criminal case, such as the one before [the court], the state has no realistic option to proceed to trial and await the inevitable outcome where vital evidence has been suppressed. If because of the unavailability of the suppressed evidence a defendant has been acquitted, the principle of double jeopardy would prevent a new trial regardless of whether the exclusionary ruling was erro-

[12] General Statutes § 54-56 provides: "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial."

[13] The federal constitutional guarantee against double jeopardy "protects against a second prosecution for the same offense after acquittal." *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). "[T]he Double Jeopardy Clause of the Fifth Amendment is applicable to the States through the Fourteenth Amendment . . . ." *Benton* v. *Maryland*, 395 U.S. 784, 787, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

neous. . . . [U]nless such pretrial review is allowed the state could never secure appellate scrutiny of such a ruling. A defendant, of course, may claim error in such a ruling upon his appeal from the judgment of conviction." [Citations omitted.]).[14] As we concluded in *Ross,* "in cases . . . where, as a result of the suppression of evidence before trial, a judgment of dismissal with prejudice fully dispositive of the case has been rendered, the state may, with the permission of the trial court as provided in General Statutes § 54-96,[15] obtain appellate review of that ruling." Id., 51.

In the present case, the defendant argues that the state did not make a sufficient showing that it could not proceed on the sexual assault charges without the victim's testimony and, therefore, failed to provide the court with an "assurance that this procedure [has] not be[en] resorted to lightly." (Internal quotation marks omitted.) *State* v. *Southard,* 191 Conn. 506, 512, 467 A.2d 920 (1983). As in *Ross,* however, we conclude that the state's willingness to have the charges dismissed provides such assurance. See *State* v. *Ross,* supra, 189 Conn. 50–51 ("[a] decision by the state to obtain dismissal of a prosecution with prejudice is a sufficiently serious precondition to the right of appeal [so as] to provide adequate assurance that this procedure will not

[14] "The defendants [in *Ross*] maintain[ed] that the state ha[d] an opportunity to secure a reversal of the decision on the motion to suppress at the trial . . . because the same judge or a different one [was] not obliged to follow the earlier ruling if he [or she was] convinced that it was erroneous . . . . Such a possibility would not, of course, [have] provide[d] appellate review. The refusal of the trial court to modify the earlier ruling could not [have] be[en] the subject of an appeal because of the constitutional provision against double jeopardy." (Citations omitted.) *State* v. *Ross,* supra, 189 Conn. 48 n.3.

[15] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

be resorted to lightly").[16] Accordingly, we conclude that the state has met the requirements set forth in *Ross* for an appeal.

## B

We next address the defendant's argument that, because the state only sought dismissal of three of the six charges against him, and, consequently, is appealing only the dismissal of those three charges, the appeal is interlocutory in nature. The defendant relies on *State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), in which this court stated: "It has long been this court's policy to discourage 'piecemeal' appeals, particularly in criminal proceedings." Id., 30. We concluded in *Curcio*, however, that there are two exceptions to this general principle: "(1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. This "second test for finality . . . focuses not on the proceeding involved, but on the potential harm to the appellant's rights." Id., 33.

The defendant focuses on the second *Curcio* exception and claims that the state has not made any showing that its interest would be destroyed if appellate review were to be postponed, but, rather, has rested on a *"bald assertion"* of harm, which is insufficient under *Curcio*. (Emphasis added.) Id., 34.[17] The state contends that

---

[16] The state's commitment to having the case reviewed is also evidenced by the fact that, as part of its agreement with the defendant, the state agreed to a reduction in the defendant's bond, thus enabling the defendant to be released from prison during the pendency of the state's appeal. Additionally, the defendant waived his speedy trial rights during the pendency of the appeal and agreed that the state had satisfied the conditions for an appeal described in *Ross*.

[17] In *Curcio*, we concluded that "[t]he trial court's denial of the defendant's motion to quash the ordering of the second grand jury, measured against these tests, is not a final judgment . . . ." *State* v. *Curcio*, supra, 191 Conn. 31.

*Curcio* does not apply because this appeal is not interlocutory in nature, but is an appeal of a final judgment under *State* v. *Ross*, supra, 189 Conn. 42, as previously discussed. Because the dismissal of the sexual assault charges constitutes a final judgment under *Ross*; id., 50–51; we agree with the state that *Curcio* is inapplicable.

We note that Practice Book (2001) § 61-6 (b), effective January 1, 2001, provides: "The state, with the permission of the presiding judge of the trial court and as provided by law, may appeal from a final judgment. In cases where an appealable judgment has been rendered on fewer than all counts of the information or complaint, the state may appeal from the judgment at the time it is rendered." In addition, Practice Book (2001) § 61-6 (c), also effective January 1, 2001, provides: "To the extent provided by law, the defendant or the state may appeal from a ruling that is not a final judgment or from an interlocutory ruling deemed to be a final judgment." Although this revised Practice Book section was not yet in effect when the state filed its appeal in this case, the commentary to the rule reflects its relevance to our resolution of this appeal. "The intent of this revision to [Practice Book §] 61-6 is to collect the ways in which an appeal from a criminal case may be taken." Practice Book (2001) § 61-6, official commentary. The commentary indicates that the revised Practice Book section, rather than breaking new ground, is merely articulating means that already existed by which an appeal may be taken—including an appeal from a judgment "on fewer than all counts of the information or complaint"; Practice Book (2001) § 61-6 (b); as in the present case.

Lastly, we address the defendant's related argument that if the state is entitled to appeal at all, it must await the completion of the trial on the remaining charges. In support of this claim, the defendant cites to *State* v.

*Southard,* supra, 191 Conn. 506, in which this court stated that "to permit [an] appeal . . . would be inconsistent with the fundamental requirements of the constitutional prohibition against double jeopardy. The intent of that constitutional prohibition is to shield criminal defendants from repeated prosecution; for that reason, the prohibition cannot in and of itself be utilized by the state as a sword to obtain review of *interlocutory* orders that would be unavailable to the defendant." (Emphasis added.) Id., 511–12. We already have concluded herein, however, that the dismissal of the sexual assault counts constitutes a final judgment under *Ross.* See *State* v. *Ross,* supra, 189 Conn. 49 ("[a] dismissal with prejudice is unquestionably a final judgment which the state may appeal"). Therefore, *Southard* is inapplicable in the present case.[18]

## II

## COLLATERAL ESTOPPEL

The state claims that a finding of ineffective cross-examination of the victim by Dixon was not necessary to the decision of the habeas court to grant the defendant's request for a new trial and that relitigation of this issue, therefore, is not barred under the doctrine of collateral estoppel. We agree.

The principle of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe* v. *Swenson,* 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). "[C]ollateral estoppel precludes a party from relitigating issues and facts *actu-*

---

[18] Furthermore, because the only substantive issue on appeal is whether the trial court correctly concluded that it was collaterally estopped from evaluating Dixon's cross-examination of the victim because of the habeas court's findings, we fail to see how a trial on the remaining charges would be helpful to the defendant.

*ally* and *necessarily* determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." (Emphasis added; internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373–74, 727 A.2d 1245 (1999). "If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." (Internal quotation marks omitted.) Id., 374. For collateral estoppel to apply, "the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding." *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 297, 596 A.2d 414 (1991).

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, supra, 248 Conn. 374; see also *P. X. Restaurant, Inc.* v. *Windsor*, 189 Conn. 153, 161–62, 454 A.2d 1258 (1983) ("[t]he party or his privy against whom collateral estoppel is asserted . . . must have been given a full and fair opportunity to litigate in a prior proceeding the issue sought to be precluded in the subsequent proceeding"). "An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, supra, 374. We review collateral estoppel claims de novo. See *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 596, 726 A.2d 502 (1999).

The state contends that the issue of the adequacy of Dixon's cross-examination of the victim was neither actually litigated nor decided by the habeas court and that the second trial court, therefore, was not collaterally estopped from determining whether Dixon's cross-examination satisfied the defendant's right to confront

the witnesses against him.[19] The state argues that the adequacy of the cross-examination was not a factor in the habeas court's decision regarding Dixon's performance and certainly was not a necessary factor in that decision. The defendant argues, to the contrary, that the habeas court based its determination of ineffective assistance of counsel on its finding that Dixon had cross-examined the victim ineffectively, that the second trial court, therefore, was collaterally estopped from evaluating the adequacy of the cross-examination, and that the victim's testimony should be excluded from the new trial. We agree with the state.

The record reveals that the second trial court based its ruling excluding the victim's testimony on what it perceived as the habeas court's finding that the cross-examination of the victim had been inadequate. When the trial court rendered its decision on February 25, 2000, the state's attorney asked: "Am I correct then, that your findings, to the extent that they are all factual findings, are based upon the findings of the habeas court?" The court responded: "That is correct. [The

[19] The confrontation clause demands that "where prior testimony is admitted at a later proceeding, the party against whom the testimony is admitted must have had an opportunity to cross-examine the witness at the earlier proceeding sufficient to endow the testimony as a whole with some indicia of reliability . . . ." (Internal quotation marks omitted.) *United States* v. *Ciak*, 102 F.3d 38, 43 (2d Cir. 1996); see also id., 40 ("while defense counsel had a conflict of interest, his cross-examination of the now-unavailable witness conferred the requisite indicia of reliability upon the [witness'] testimony" [internal quotation marks omitted]). "We believe that the test is the opportunity for full and complete cross-examination rather than the use made of that opportunity." *State* v. *Parker*, 161 Conn. 500, 504, 289 A.2d 894 (1971). In order to satisfy the confrontation clause then, it is necessary that the testimony bear sufficient "indicia of reliability . . . to afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement." (Citation omitted; internal quotation marks omitted.) *State* v. *Outlaw*, 216 Conn. 492, 505, 582 A.2d 751 (1990); see also *Ohio* v. *Roberts*, 448 U.S. 56, 68–73, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980) (examining whether prior testimony bore sufficient indicia of reliability under confrontation clause analysis).

court has] made no independent findings . . . ." Furthermore, the court stated: "The defendant makes a second tier argument that even if collateral estoppel is not applicable . . . under the general policies of the rule . . . this court should still find the victim's testimony inadmissible. [This court does] not reach that issue." Rather than evaluating Dixon's cross-examination of the victim independently, the trial court, citing the doctrine of collateral estoppel, relied on what it interpreted as a finding by the habeas court that Dixon's cross-examination of the victim had been insufficient. We conclude, however, that the habeas court made no such finding.

The habeas court's September 19, 1997 memorandum of decision granting the defendant's petition for a writ of habeas corpus was based on both the habeas court's finding that Dixon had a conflict of interest and its finding that Dixon's representation of the defendant constituted ineffective assistance of counsel under *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).[20] The second trial court stated that, in the present case, "effective assistance of counsel, conflict of interest, credibility and confrontation are so intertwined they are one and the same . . . ." We conclude that a finding of inadequate cross-examination was not necessary to either the habeas court's conflict of interest finding or its ineffective assistance of counsel finding.

---

[20] The United States Supreme Court outlined a two part test for ineffective assistance of counsel in *Strickland*: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland* v. *Washington*, supra, 466 U.S. 687.

We first address the habeas court's finding that Dixon had an actual conflict of interest that adversely affected his performance. See *Phillips* v. *Warden*, 220 Conn. 112, 132–33, 595 A.2d 1356 (1991); see also *Cuyler* v. *Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 597 (1980) ("[T]he possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of . . . Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."). We conclude that a finding of inadequate cross-examination was not necessary to that determination. The habeas court found an actual conflict of interest in that Dixon had stolen the defendant's portion of the inheritance and forced the defendant to retain him as counsel in the criminal case. The habeas court stated that this conflict of interest had affected Dixon's performance because it had resulted in Dixon: (1) effectively denying the defendant his counsel of choice by withholding the money with which the defendant would have retained another attorney; (2) failing to spend the money necessary to conduct an adequate investigation; and (3) allowing the defendant to appear before the jury in prison clothing, rather than spending the money to provide him with more appropriate attire as the defendant had requested.[21] The habeas court did not mention inadequate cross-examination as one of the manifestations of Dixon's conflict of interest. See *State* v. *Ball*, 226 Conn. 265, 276, 627 A.2d 892 (1993) ("[c]ollateral estoppel does not bar relitigation of a nonessential issue because such an issue may not have been afforded careful deliberation and analysis").

---

[21] The habeas court found that, when the defendant had asked Dixon for a suit, Dixon falsely had represented to him that there was no money to buy a suit because the victim had garnished the inheritance funds in her civil suit against the defendant. The habeas court indicated that, had Dixon not allowed the defendant to appear in court in prison clothing, the defendant may have been acquitted on the sexual assault charges.

Furthermore, a finding of a conflict of interest would not render the victim's testimony during Dixon's cross-examination per se inadmissible.[22] In *United States* v. *Ciak*, 102 F.3d 38, 44 (2d Cir. 1996), the court stated: "The defendant urges us to find that [the attorney's] cross-examination of [the witness] at the first trial was constitutionally inadequate per se because of the difficulty in determining the limits to the effect of [the attorney's] conflict of interest. . . . We decline the invitation to adopt so broad a rule. Rather, following the approach now well-established in applicable precedent, we look to the actual transcript of [the witness'] testimony—in particular to [the attorney's] cross-examination of [the witness]—to determine whether the cross-examination imbues the testimony with the requisite indicia of reliability." (Internal quotation marks omitted.) As we previously noted, the habeas court in the present case did not even allude to a finding of ineffective cross-examination when it articulated the reasons underlying its finding of a conflict of interest. Because Dixon's ineffective cross-examination was not necessary to the habeas court's determination that Dixon had a conflict of interest, the habeas court's determination did not collaterally estop the trial court from independently evaluating Dixon's cross-examination of the victim.

We now consider the defendant's claim that the dispositive factor in the habeas court's decision was Dixon's ineffective assistance to the defendant, specifically, Dixon's failure to pursue a consent defense, which, the defendant argues, was the only viable defense. The defendant claims that attacking the victim's credibility on cross-examination constituted the necessary means by which to pursue the consent defense. The defendant argues, therefore, that a finding

---

[22] The state argues that the conflict of interest was financial in nature and did not affect Dixon's cross-examination of the victim.

of inadequate cross-examination was necessary to the habeas court's decision to grant the defendant's habeas petition.

We conclude, however, that the defendant's logic is flawed. Even if it is assumed that the habeas court's determination of ineffective assistance of counsel was the dispositive factor in that court's decision to grant the defendant's habeas petition, the habeas court did not indicate that a failure to pursue a consent defense was the only, or even a necessary, basis for that decision. The habeas court found that Dixon's inadequate pretrial investigation alone was sufficient to constitute ineffective assistance of counsel. It also cited each of the following factors in support of its finding of ineffective assistance of counsel: Dixon's failure to dress the defendant in nonprison garb, his failure to retain a medical expert[23] and his failure to present a consent defense.[24]

Furthermore, even if a finding that Dixon failed to establish an adequate consent defense had been necessary to the habeas court's ineffective assistance of counsel determination, attacking the victim's credibility

[23] The record suggests that a medical expert should have been retained to testify about the lack of bruises on the victim's thighs and rectal area after the incident. Such evidence is inconsistent with the claim of repeated sexual assaults. Furthermore, the expert could have testified about the victim's high blood alcohol level after the incident, thereby challenging the victim's assertion that she did not consume alcohol on the night in question.

[24] The record also suggests that the testimony of other potential witnesses not called by Dixon could have strengthened the defendant's consent defense. These potential witnesses were neighbors of the victim who believed that the victim and the defendant had been cohabitating. Additionally, the record indicates that Dixon's inadequate investigation precluded him from convincing the trial court to admit records of what is now the department of children and families, which indicate that, due to the victim's significant substance abuse problems, the custody of her daughter was in jeopardy. Arguably, evidence of a consensual sexual relationship in the apartment between the victim and the defendant could have had an adverse impact on the victim's delicate custody situation.

through cross-examination was not the necessary means by which to establish that defense. A consent defense could have been pursued through the testimony of other witnesses, found by an investigator Dixon had hired, who believed that the defendant had been living with the victim and who could have provided testimony to contradict the victim's story about the nature of her relationship with the defendant. Similarly, a medical expert could have testified for the defense regarding the conspicuous lack of bruises found below the victim's waist or about the victim's blood alcohol content after the incident. Such evidence could have contradicted the victim's testimony that she did not consent and that she had not consumed alcohol on the night in question. Although an inadequate cross-examination of the victim was consistent with the habeas court's findings, it was not cited by the habeas court explicitly. Furthermore, to read such a conclusion into the habeas court's decision would be contrary to the requirement that issues be actually litigated and determined for collateral estoppel to apply.

The undercurrent of the habeas court's discussion is that Dixon's inadequate investigation prevented him from making an informed decision about which defense to pursue. The habeas court did not address the inadequacy of Dixon's cross-examination of the victim specifically. The habeas court's broad statement that Dixon's conflict of interest "permeated the entire criminal trial" does not render the testimony of the victim per se inadmissible, and it does not collaterally estop the second trial court from independently evaluating the adequacy of Dixon's cross-examination in determining the admissibility of the victim's testimony in the new trial.

It is also worth noting that, because the issue of the adequacy of Dixon's cross-examination of the victim

was not discussed in the defendant's habeas pleadings,[25] and, given the fact that the issue arose in a habeas proceeding and not a criminal trial, the state never had an adequate opportunity to argue its position regarding the adequacy of the cross-examination. The state lacked the incentive to expend the resources to assert its position as thoroughly as it would have had in a criminal trial at which the state either would have to prove the defendant's guilt beyond a reasonable doubt or forever lose the opportunity to convict him on that charge. See, e.g., *State* v. *McDowell*, 242 Conn. 648, 655, 699 A.2d 987 (1997) ("the state . . . had no incentive to present its best evidence at the revocation proceeding where there was a lower standard of proof"); *State* v. *Parker*, supra, 161 Conn. 502 ("[w]here the issue is only probable cause the prosecuting attorney does not have the same interest in cross-examining an alibi witness as does the attorney for the State upon a trial on the issue of guilt or innocence"); see also *Mulligan* v. *Rioux*, 229 Conn. 716, 752, 643 A.2d 1226 (1994) ("doctrine of collateral estoppel did not preclude the plaintiff from litigating the existence of probable cause even though

---

[25] The defendant's eleventh amended petition offered approximately sixteen potential grounds for Dixon's conflict of interest, not one of which explicitly discussed Dixon's cross-examination. Only one subsection to a subpart of one of these examples mentions questioning of the victim: "Dixon failed to make the preliminary showing required to warrant 'in camera' inspection of the victim's mental health records in that . . . Dixon failed to . . . question the victim to elicit testimony about how records he sought might shed light on the relationship between [the] victim's alleged alcoholism and her capacity to testify truthfully . . . ." This argument seems more supportive of a claim concerning Dixon's failure to convince the court to admit the victim's mental health records, a symptom of which was his failure to question the victim about her mental capacity, rather than an argument alleging ineffective cross-examination. Virtually the same language regarding Dixon's failure to question the victim about the medical records can be found in the amended petition in one of the four subsections to one of nineteen potential grounds for a finding of misconduct by Dixon. The defendant does not, and presumably cannot, point to any section of his amended petition in which he explicitly asserts that Dixon's cross-examination of the victim was inadequate.

that issue had already been partially litigated at an earlier *Franks*[26] hearing"). Furthermore, the state could not have predicted that a conclusion that never was articulated by the habeas court would be considered a necessary finding for purposes of collateral estoppel.[27]

On remand, the trial court will be required independently to evaluate the reliability of the victim's prior testimony and determine its admissibility at trial.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

---

[26] *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

[27] The defendant devotes much of his brief to discussing what he perceives to be the deficiencies in Dixon's cross-examination of the victim and relies on cases such as *Mancusi* v. *Stubbs*, 408 U.S. 204, 92 S. Ct. 2308, 33 L. Ed. 2d 293 (1972), as patterns for his analysis. Such an analysis is beyond the scope of this appeal. It is worth noting, however, that, in *Mancusi*, the United States Supreme Court declined to find that the New York court was bound by any determination of the federal habeas court regarding the merits of the cross-examination when the habeas court had apparently only determined that, because of the short interval between counsel's appointment and the date of the trial, counsel was per se ineffective. See id., 214. The court concluded that, because such a per se theory had been followed, the habeas court had not evaluated the cross-examination. Id. Accordingly, there was no finding regarding the merits of the cross-examination to bind the New York court. Id.

