Daniel GROSS, Plaintiff,

v.

M. Jodi RELL, Governor, State
of Connecticut, et al.,
Defendants.

Civil No. 3:06CV01703(AWT).

United States District Court,
D. Connecticut.

April 20, 2007.

John C. Peters, West Hartford, CT, for Plaintiff.

Clare E. Kindall, Jacqueline S. Hoell, Attorney General's Office, Louis B. Blumenfeld, Cooney, Scully & Dowling, Hartford, CT, Francis J. Grady, Grady & Riley, Waterbury, CT, Anthony Nuzzo, Jr., James R. Fiore, Nadine M. Pare, Robert J. Johnson, Nuzzo & Roberts, Cheshire, CT, Bonnie L. Patten, Kevin Shepherd Budge, Wiggin & Dana, New Haven, CT, for Defendants.

### RULING ON MOTION TO DISMISS CLAIMS AGAINST JUDGE THOMAS P. BRUNNOCK

THOMPSON, District Judge.

Pursuant to Fed.R.Civ.P. 12(b)(6), defendant probate judge Thomas P. Brunnock ("Brunnock") moves to dismiss all claims against him as barred by absolute judicial immunity. For the reasons set forth below, the motion is being granted.

### I. ALLEGATIONS AS TO DEFENDANT BRUNNOCK

The court takes the facts as alleged in the complaint as true for purposes of this motion. On or about June 28, 2005, the

plaintiff, Daniel Gross, was an 86–year–old man who was convalescing at his daughter's home in Waterbury, Connecticut, after being discharged from a New York hospital for treatment of a leg infection on June 25, 2005. On August 8, 2005, the plaintiff was admitted to Waterbury Hospital because of continuing problems. After the plaintiff remained there for nine days, an employee of Waterbury Hospital filed an application for the appointment of a conservator for the plaintiff with the Waterbury probate court. Brunnock, an attorney and the elected probate court judge for Waterbury, appointed Attorney Jonathan C. Newman as counsel for the plaintiff and issued a notice of hearing on August 25, 2005. The plaintiff alleges that the notice was improperly served but concedes that Attorney Newman met with the plaintiff prior to the September 1, 2005 hearing.

On September 1, 2005, Brunnock issued a "standard form" probate decree, finding that (i) notice was given; (ii) the respondent was unable to request or obtain counsel and counsel was appointed for him; (iii) the plaintiff resided or had domicile in the probate district and that the court had jurisdiction; and (iv) the plaintiff was incapable of managing his affairs or caring for himself by reason of dementia.

Brunnock appointed Attorney Kathleen Donovan as conservator and did not require a bond. At the request of Conservator Donovan, Brunnock issued two orders, one on November 3, 2005, and the other on May 1, 2006, restricting visits by the plaintiff's daughter. Finally, Brunnock granted the conservator's application to sell the plaintiff's home in Long Island.

None of these orders were appealed. However, on July 12, 2006, the Connecticut Superior Court granted a writ of habeas corpus voiding the conservatorship, finding that the probate court lacked jurisdiction at the time the conservator was appointed because the plaintiff was neither a resident nor a domiciliary of the state of Connecticut.

## II. *LEGAL STANDARD*

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from those allegations in the light favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), cert. denied, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). The function of a motion to dismiss is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). Dismissal is warranted when, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991). A complaint should be dismissed if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. *DISCUSSION*

 The U.S. Supreme Court has established a two-part test for evaluating claims of absolute judicial immunity. First, a judge is immune only for actions performed in his or her judicial capacity; and second, judges are subject to liability only when they have acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*,

435 U.S. 349, 356–57, 360–63, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *see also Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991).

 The principle of judicial immunity recognizes that a judge may make mistakes, but holds that "it is better for a judge when exercising the discretion inherent in his judicial power 'to risk some error and possible injury from such error than not to decide or act at all.'" *Green v. Maraio*, 722 F.2d 1013, 1017 (2d Cir.1983) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 242, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359, 98 S.Ct. 1099 (internal citations omitted). "Because 'some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction ...,' the scope of the judge's jurisdiction must be construed broadly when the issue is the immunity of the judge." *Id.* at 356, 98 S.Ct. 1099 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 352, 20 L.Ed. 646 (1872)).

 In *Stump*, the court clarified the difference between an "excess of jurisdiction" and "the clear absence of all jurisdiction over the subject matter" as follows:

Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, al-though upon the correctness of his determination in these particulars the validity of his judgments may depend.

*Stump*, 435 U.S. at 356 n. 6, 98 S.Ct. 1099 (citing *Bradley*, 80 U.S. at 351, 80 U.S. 335). Thus absolute immunity protects a judicial action unless the action was "manifestly or palpably beyond" the court's authority. *Root v. Liston*, 444 F.3d 127, 132 (2d Cir.2006). Moreover, absolute judicial immunity is not pierced by allegations of bad faith or malice. *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Mireles*, 502 U.S. at 11–12, 112 S.Ct. 286.

Here, the plaintiff contends that defendant Brunnock acted in the clear absence of all jurisdiction. He also contends that Brunnock is barred by the doctrine of collateral estoppel and by the Rooker–Feldman doctrine from asserting absolute judicial immunity as a defense.

### A. Clear Absence of All Jurisdiction

 The plaintiff is suing Brunnock for actions he took in his judicial capacity, including appointing counsel for the plaintiff, ruling that he was in need of a conservator, appointing a conservator, and ruling that the plaintiff's house could be sold to pay bills. None of these actions are outside the scope of function of a probate court judge. *See Collins v. West Hartford Police Dept.*, 380 F.Supp.2d 83, 90 (D.Conn.2005) ("appointment of a conservator for [the plaintiff's mother] and removal of [the plaintiff's] power of attorney, placement of a lis pendens on [the mother's] home, taking possession of [the mother's bank account], and selling [the mother's] home ... each 'properly viewed as a judicial act within the jurisdiction of the probate court.'").

The plaintiff contends that Brunnock acted in "clear absence of all jurisdiction."

He argues (1) that he was, and is, a New York resident, and therefore Brunnock lacked any jurisdiction over him; (2) that judicial immunity does not protect courts of limited jurisdiction to the extent it protects courts of general jurisdiction; (3) that probate courts lack jurisdiction to issue orders regarding visitation; and (4) that Brunnock made procedural errors and was motivated by a desire to generate probate fees. The court addresses these arguments in turn.

### 1. *Plaintiff's New York Residency*

 The fact that the plaintiff was, and is, a New York resident would not show that Brunnock acted in "clear absence of all jurisdiction." An application for the appointment of an involuntary conservator is to be filed "in the court of probate in the district in which the respondent resides or has his domicile." Conn. Gen.Stat. § 45a–648 (a). For a place to be one's domicile, one must intend to make the place a home permanently or indefinitely. *Smith v. Smith,* 174 Conn. 434, 439, 389 A.2d 756 (1978); *Adame v. Adame,* 154 Conn. 389, 391, 225 A.2d 188 (1966). A person may simultaneously have two or more residences but only one domicile at any one time. *Smith,* 174 Conn. at 439, 389 A.2d 756; *Taylor v. Taylor,* 168 Conn. 619, 621, 362 A.2d 795 (1975). By way of contrast, a person may have a residence in a place in which he or she intends to live only temporarily. A resident of a place is one who is an actual stated dweller in that place, as distinguished from a transient dweller, and he may have a domicile elsewhere. *Don v. Don,* 142 Conn. 309, 311, 114 A.2d 203 (1955).

Here, the plaintiff was living with his daughter in Waterbury, Connecticut. He was admitted to Waterbury Hospital, and nine days after his admission, the hospital applied to the Waterbury probate court for a conservator. The application submitted by Waterbury Hospital gave an address in Waterbury as the plaintiff's home address and Waterbury Hospital represented that the plaintiff "[i]s now living at the present address under abuse and is domiciled in the town under abuse." (Doc. No. 40–4). Although the plaintiff owned a house in New York, it was far from clear that, under Connecticut law, the plaintiff did not reside in Connecticut at the time.

### 2. *Judicial Immunity in Courts of Limited Jurisdiction*

 The plaintiff also appears to argue that courts of limited jurisdiction are afforded less protection by the doctrine of absolute judicial immunity than are courts of general jurisdiction. The Second Circuit addressed this question in *Tucker v. Outwater,* 118 F.3d 930 (2d Cir.1997), where it noted:

[T]here is Supreme Court dictum to the effect that judges who sit on courts of limited (as opposed to general) jurisdiction are immune from damages only if they act within their jurisdiction, and are subject to damage actions if they act in excess, although not in clear absence, of all jurisdiction. Two relatively recent Eighth and Tenth Circuit case have endorsed, without discussion, these Supreme Court statements.

*Id.* at 937. However, the court in *Tucker* concluded that the clear weight of authority within the Second Circuit supported application of the "clear absence of jurisdiction" test to courts of both general and limited jurisdiction and assumed, without deciding, that "a judge of a court of limited jurisdiction is entitled, like a judge of a court of general jurisdiction, to judicial immunity for all judicial acts not performed in the clear absence of all jurisdiction." *Id.* at 937–938. This court has subsequently applied the "clear absence of

all jurisdiction" test to a probate court. *See Collins,* 380 F.Supp.2d at 90 (citing the "clear absence of all jurisdiction" test in finding that probate judge was entitled to judicial immunity). Accordingly, the court concludes that Brunnock is entitled to absolute judicial immunity for any action not taken in the "clear absence of all jurisdiction."

### 3. *Probate Courts' Equitable Authority to Restrict Visitation*

█ In ¶ 120 of the Revised Complaint, the plaintiff relies on Conn. Gen.Stat. §§ 45a–98 and 52–471 for the proposition that the probate courts may not issue orders regarding visitation. However, Conn. Gen.Stat. § 52–471 expressly applies to "any judge of any court of equitable jurisdiction." "While probate courts do not have general equity jurisdiction, they may exercise equitable powers under certain circumstances. However, the equity which the Probate Court administers must grow out of and be inseparably connected with the matter the court is acting upon." *Killen v. Klebanoff,* 140 Conn. 111, 118, 98 A.2d 520 (Conn.1953) (internal quotation and citation omitted). Here, the probate court's equitable order regarding visitation was sufficiently connected with the probate court's supervision of the conservator that it cannot be said to have been made in the clear absence of all jurisdiction. *See* Conn. Gen.Stat. §§ 45a–98(a)(7) ("courts of probate in their respective districts shall have the power to ... make any lawful orders or decrees to carry into effect the power and jurisdiction conferred upon them by the laws of this state").

### 4. *Alleged Procedural Errors and Improper Motivation*

█ The plaintiff's argument that procedural errors committed by a defendant may deprive the defendant of his judicial immunity has been rejected by the Supreme Court:

A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors. The Court made this point clear in *Bradley,* where it stated: "[T]his erroneous manner in which [the court's] jurisdiction was exercised, however it may have affected the validity of the act, did not make the act any less a judicial act; nor did it render the defendant liable to answer in damages for it at the suit of the plaintiff, as though the court had proceeded without having any jurisdiction whatever . . . ."

*Stump,* 435 U.S. at 359, 98 S.Ct. 1099 (internal citation omitted).

### B. Collateral Estoppel

█ The plaintiff also argues that because he prevailed in his action for a writ of habeas corpus, and the habeas court found that the plaintiff was not a Connecticut resident and that Connecticut was not his domicile, Brunnock is bound by the doctrine of collateral estoppel. However, the habeas court's ruling that the probate court lacked jurisdiction does not collaterally estop Brunnock from asserting absolute judicial immunity in a civil action for money damages. Under Connecticut law, "collateral estoppel has no application in the absence of an identical issue," *Gladysz v. Planning & Zoning Comm'n,* 256 Conn. 249, 261, 773 A.2d 300 (2001), and it may only be invoked "between the same parties or those in privity with them." *State v. Joyner,* 255 Conn. 477, 490, 774 A.2d 927 (2001). For "an issue to be subject to collateral estoppel, (1) it must have been fully and fairly litigated in the first action, and (2) it also must have been actually decided and (3) the decision must have been necessary to the judgment." *Golino v. New Haven,* 950 F.2d 864, 869

(2d Cir.1991) (quoting *Aetna Cas. & Sur. Co. v. Jones,* 220 Conn. 285, 296, 596 A.2d 414 (1991)). The "party seeking estoppel has the burden of showing that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Windsor Locks Assocs. v. Planning & Zoning Comm'n,* 90 Conn.App. 242, 252, 876 A.2d 614 (2005) (quoting *Dowling v. Finley Assocs., Inc.,* 248 Conn. 364, 377, 727 A.2d 1245 (1999)).

Thus, collateral estoppel does not bar Brunnock from asserting absolute judicial immunity in this action. First, for "collateral estoppel to apply, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding." *Joyner,* 255 Conn. at 490, 774 A.2d 927 (quoting *Aetna,* 220 Conn. at 297, 596 A.2d 414); *see also Corcoran v. Dep't of Soc. Servs.,* 271 Conn. 679, 689–90, 859 A.2d 533 (2004) ("Because we have recognized that applying the doctrine of collateral estoppel has harsh consequences, namely, cutting off a party's right to future litigation on a given issue, we have been reluctant to uphold the invocation of the doctrine unless the issues are completely identical."). The issue that was before the habeas court is not identical to the issue before this court. The issue before the habeas court was whether to terminate the conservatorship, and to decide the issue the habeas court found that the probate court lacked jurisdiction. For this court, the issue is whether absolute judicial immunity applies, and to decide the issue this court must determine whether Brunnock acted in the clear absence of all jurisdiction. A finding of no jurisdiction is quite different from a finding of a clear absence of all jurisdiction. *See Stump v. Sparkman,* 435, U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ("the scope of the judge's jurisdiction must be construed broadly when the issue is the immunity of the judge."). If this were not

so, then any time a judge was overruled on jurisdictional grounds, that judge would no longer be protected by judicial immunity.

▮▮▮ Second, any finding by the habeas court that Brunnock acted in the clear absence of all jurisdiction was not necessary to the habeas court's final judgment. Under Connecticut law, "[i]f an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." *Joyner,* 255 Conn. at 490, 774 A.2d 927. "An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." *Dowling,* 248 Conn. at 374, 727 A.2d 1245. The habeas court was presented with the issue of whether the probate court lacked subject matter jurisdiction and the conservatorship should be vacated. Any finding that Brunnock personally acted in the clear absence of all jurisdiction would have been superfluous, and "[c]ollateral estoppel does not bar relitigation of a nonessential issue." *State v. Ball,* 226 Conn. 265, 276, 627 A.2d 892 (1993).

## C. The Rooker–Feldman Doctrine

▮▮▮ The plaintiff also argues that the *Rooker-Feldman* doctrine bars Brunnock from asserting judicial immunity as a defense. Under the *Rooker-Feldman* doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). The doctrine is "confined to cases … brought by state-court losers complaining of injuries caused by

state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

The *Rooker-Feldman* doctrine does not apply here because the plaintiff, not Brunnock, brought this federal court action. Therefore, this is not a "case brought by a state-court loser," but rather an action brought by the party who prevailed in the state court in a collateral proceeding. In addition, Brunnock is not "complaining of injuries caused by state-court judgments," and is not claiming that a state-court judgment violated his federal rights.

## IV. *CONCLUSION*

For the reasons set forth above, the Motion to Dismiss Claims Against Judge Thomas P. Brunnock (Doc. No. 35) is hereby GRANTED. The Clerk shall terminate this action as to defendant Thomas P. Brunnock.

It is so ordered.